## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Peter Rickmyer, | **Case No. 14-cv-614 (SRN/SER)** |
| Plaintiff, | |
| v. | |
| | **REPORT & RECOMMENDATION** |
| Michael Jungers, in his individual capacity and official capacity with ABM Security Services, Inc.; Troy Walker, in his individual capacity, and in his capacity as a Minneapolis Police Officer; Bruce Johnson, in his individual capacity, and in his capacity as a Minneapolis Police Officer; ABM Security Services, Inc., a/k/a/ American Building Maintenance Industries, Inc.; and City of Minneapolis, | |
| Defendants. | |

STEVEN E. RAU, United States Magistrate Judge

This matter is before the undersigned on Plaintiff Peter Rickmyer's ("Rickmyer") application for leave to proceed *in forma pauperis* ("IFP Application"), pursuant to 28 U.S.C. § 1915 [Doc. No. 2], and Rickmyer's Motion to Appoint Counsel [Doc. No. 3].[1] This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and that Rickmyer's IFP Application and Motion to Appoint Counsel be denied as moot.

---

[1] The undersigned recused himself from another, unrelated case initiated by Rickmyer. *See* Order of Recusal Dated Sept. 13, 2013, *Rickmyer v. Browne*, No. 13-cv-559 (SRN/LIB) [Doc. No. 152]. Because the recusal was based on a defendant, David Schooler, who is not a party to this case, the recusal has no bearing on the instant case.

## I.      BACKGROUND

### A.      Factual Background

Rickmyer alleges that he is physically disabled and has "limited language abilities due to cognitive deficits." (Second Am. Compl.) [Doc. No. 13 ¶ 16]. Rickmyer states that he asked Defendant Michael Jungers ("Jungers"), who is an employee of Defendant ABM Security Services, Inc. ("ABM"), to put in an automated door near the bus stop and to put a handicap parking spot on the street level of the 7th Street Garage. (Second Am. Compl. ¶¶ 9, 17). Jungers was "furious" and conspired with Defendants Troy Walker ("Walker") and Bruce Johnson ("Johnson") to "trespass" Rickmyer from the 5th and 7th Street Parking Garages, connected skyways, and public transportation on May 14, 2013. (*Id.* ¶¶ 19, 21). At that time, Walker and Johnson were Minneapolis Police Officers working for ABM. (*Id.* ¶¶ 8–11, 15). By "trespass," Rickmyer appears to allege that Johnson "moved [Rickmyer's] body sideways" with his finger and told Rickmyer he "could not enter and or be on the property of [the] 7th and 5th Street [G]arages, skyways adjacent to the garages for one year." (*Id.* ¶ 25). Rickmyer alleges other individuals, who did not appear to have any disabilities, observed this incident, and were treated more favorably by the City of Minneapolis ("Minneapolis") and ABM employees. (*Id.* ¶ 26). Rickmyer alleges the reasons for "trespassing" him were a pretext for discrimination and retaliation. (*Id.* ¶ 27).

Rickmyer also alleges that Walker and Johnson "were furious" that Rickmyer sued their boss, Mike Martin ("Martin") and others; that Martin advised Rickmyer that no supervisor would take adverse action towards him; that Walker filed a false police report and a false supplemental police report; that the Minneapolis Police Department failed to properly train Jungers to supervise Walker and Johnson; that the Minneapolis Police Department failed to properly

supervise Jungers; that Minneapolis failed to properly supervise Walker, Johnson, and Jungers; and that ABM failed to request that Minneapolis properly train Jungers and failed to properly supervise Jungers, Walker, and Johnson. (*Id.* ¶¶ 20, 28–32). As a result, Rickmyer alleges that his liberty was restrained for one year, he "experienced discrimination," and he suffered shame, humiliation, embarrassment, physical pain, anguish, and diminished quality and enjoyment of life.  (*Id.* ¶¶ 26, 33–36); *see also* (*id.* ¶¶ 37–38).

Rickmyer makes claims under the following federal and Minnesota statutes: Count 1: 42 U.S.C. § 12131 *et seq.* (ADA Public Accommodations Discrimination);[2] Count 2: 42 U.S.C. § 12181 *et seq.* (ADA Public Accommodations Discrimination); Count 3: 42 U.S.C. § 12203 (Retaliation); Count 4: Minn. Stat. § 363A.11 (MHRA Public Accommodations Discrimination);[3] Count 5: 42 U.S.C. § 1983 (Against All Individual Defendants); Count 6: 42 U.S.C. § 1985 (Against All Individual Defendants); Count 7: 42 U.S.C. § 1986 (Against All Individual Defendants); Count 8: 42 U.S.C. § 1983, Failure to Prevent Constitutional Violation (Against All Individual Defendants); Count 9: Direct and Vicarious Liability of ABM; Count 10: Direct and Vicarious Liability of Minneapolis; and Count 11: Civil Rights Violations Against Minneapolis. (*Id.* ¶¶ 40–127).[4]

**B.     Procedural Background**

The facts of this case were part of another civil case filed by Rickmyer. *See Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) (the "*Walker* case"). In the *Walker* case, Rickmyer alleged Johnson and Walker violated the ADA and his constitutional rights under 42 U.S.C. §§ 1983, 1985, and 1988, and that they retaliated against him under the ADA. Compl., *Rickmyer v.*

---

[2]     "ADA" refers to the Americans with Disabilities Act of 1990.
[3]     "MHRA" refers to the Minnesota Human Rights Act.
[4]     The titles in parentheses correspond to Rickmyer's headings. *See* (Second Am. Compl. ¶¶ 40–127).

*Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No. 1]. The Court recommended dismissal pursuant to

28 U.S.C. § 1915(e)(2)(B)(ii) in connection with its recommendation to deny Rickmyer's motion

for a temporary restraining order. *See* Report & Recommendation Dated June 3, 2013 ("*Walker*

R&R"), *Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No. 29]. The Honorable John R.

Tunheim dismissed the *Walker* case without prejudice following Rickmyer's notice of voluntary

dismissal. *See* Notice of Dismissal, *Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No.

30]; Order of Dismissal, *Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No. 32].

Rickmyer initiated the instant lawsuit on March 6, 2014, by filing a complaint and

exhibit, IFP Application, and Motion to Appoint Counsel.   (Compl.) [Doc. No. 1]; (IFP

Application); (Mot. to Appoint Counsel). On March 14, 2014, Rickmyer filed an amended

complaint and exhibit. (Am. Compl.) [Doc. No. 7].[5] The Court found the Amended Complaint

failed to state a claim on which relief could be granted in violation of 28 U.S.C.

§ 1915(e)(2)(B)(ii), and ordered Rickmyer to file a second amended complaint on or before June

2, 2014, at which time the Court would reconsider Rickmyer's IFP Application. *See* (Am. Order

Dated Apr. 21, 2014) [Doc. No. 12]. Rickmyer filed his second amended complaint on May 22,

2014. (Second Am. Compl.).

In his Second Amended Complaint, Rickmyer asserts Defendants violated his

constitutional rights and various provisions of the Americans with Disabilities Act ("ADA"). *See*

(Second Am. Compl.). These claims are similar to the claims made in the *Walker* case and

---

[5]      Rickmyer attempted to withdraw his Complaint and the accompanying exhibit via letter
to the Clerk's Office. (Letter to Clerk's Office) [Doc. No. 6]. The Clerk's Office advised
Rickmyer that it could not withdraw the Complaint and exhibit as Rickmyer requested.  (Letter
from Clerk's Office to Rickmyer) [Doc. No. 10]. The Clerk's Office advised Rickmyer to file a
motion or consult the Federal Rules of Civil Procedure and the Local Rules. (*Id.*). Rickmyer filed
an Amended Complaint, but took no additional action in response. Regardless, the Amended
Complaint superseded the Complaint. *See In re Wireless Telephone Fed. Cost Recovery Fees
Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citation omitted).

involve at least some of the facts described in the *Walker* case. *Compare* (Second Am. Compl.) *with* Compl., *Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No. 1].[6] In other words, Rickmyer has now filed four complaints based on the same set of facts. *See Walker* R&R; (Compl.); (Am. Compl.); (Second Am. Compl.). The Court now reviews the Second Amended Complaint to determine if it states a claim on which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    DISCUSSION

### A.    Legal Standard

An IFP application will be denied, and the action will be dismissed, if the IFP applicant has filed a complaint that fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam).

To state an actionable claim for relief, a plaintiff must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some redress under some cognizable legal theory. *See Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (stating that although federal courts must "view *pro se* pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law."). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B.    Analysis

#### 1.    Disability Claims

Rickmyer makes several claims that he was discriminated against and retaliated against in violation of the ADA. *See* (Second Am. Compl. ¶¶ 40–65). Under the ADA, Rickmyer is

---

[6]     The *Walker* case also involved an incident that took place at Rickmyer's residence. *See Walker* R&R at 2. That incident is not a part of the instant case. *See* (Second Am. Compl.).

disabled if he has (1) "a physical or mental impairment that substantially limits one or more major life activities . . . [;]" (2) "a record of such impairment;" or (3) he is "regarded as having such an impairment . . . ."  42 U.S.C. § 12102(1). Rickmyer alleges he is "physically disabled due to [h]ammer toe, degenerated disks in cervical spine, and lower lumbar." (Second Am. Compl. ¶ 16). His physical conditions cause him pain, which in turn, cause him to make facial expressions. (*Id.*). He also alleges he has "limited language abilities due to cognitive deficits." (*Id.* ¶ 16). Rickmyer makes no factual allegations that his disabilities substantially limit one or more major life activities. *See* 42 U.S.C. § 12102(1)(A). Likewise, Rickmyer has not presented any facts showing a record of impairment. *See id.* § 12012(1)(B). Rickmyer's assertions about his disability are not sufficient to support his legal conclusion that he is considered disabled under the ADA.

Rickmyer may be "regarded as" disabled for purposes of the ADA if he establishes that he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Rickmyer's allegations that Walker and Johnson retaliated against him due to his disabilities are not supported by any facts.  *See* (Second Am. Compl. ¶ 27). While retaliation is prohibited by Section 12203 of the ADA, Rickmyer fails to allege what disability Walker and Johnson regarded or perceived him to have. He likewise fails to allege specific facts supporting his legal conclusion that "Defendants['] reasons for trespassing me [were] mere pretext for discrimination and retaliation."  (*Id.*).

Rickmyer likewise fails to allege sufficient facts to support a claim of retaliation. Section 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." To establish a prima facie case of retaliation under the ADA, Rickmyer must show "(1) that he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999) (internal citations omitted). Rickmyer's Second Amended Complaint does not specifically allege that he engaged in any statutorily protected activity. To the extent Rickmyer views his requests to Jungers for automated doors and to put a handicap parking spot on the street level of the 7th Street Garage as protected activities, he does not allege that any practices at the 7th Street Garage failed to comply with the ADA or that he "made a charge, testified, or assisted . . ." in any type of proceeding described in the ADA. *See* 42 U.S.C. § 12203(a); (Second Am. Compl. ¶ 17). Therefore, Rickmyer fails to state an ADA claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

MHRA claims are analyzed using the same standard as ADA claims. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citations omitted). Therefore, because Rickmyer fails to state a cognizable ADA claim, his MHRA claim (Count 4) fails as well.[7]

### 2.    28 U.S.C. § 1983 Claim

In Count 5, Rickmyer alleges Defendants violated his First Amendment rights. (Second Am. Compl. ¶¶ 37, 78). To establish a prima facie First Amendment retaliation claim under 42 U.S.C. § 1983, he must show that "(1) he engaged in a protected activity; (2) the government

---

[7]    Whether an impairment "materially limits" a major life activity under the MHRA is a less stringent requirement than whether an impairment "substantially limits" a major life activity under the ADA. *Kammueller*, 383 F.3d at 784. But because Rickmyer makes no factual allegations regarding his impairments' impact on major life activities, this difference between MHRA and ADA claims is immaterial to the analysis here.

official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citation omitted). Construing the Second Amended Complaint liberally, the Court finds no allegations that constitute a claim for relief that is plausible on its face. Rickmyer alleges he was exercising his right to political speech, freedom of expression, freedom of association, right to petition the government, "right to be disabled in communication," and he is physically disabled. (Second Am. Compl. ¶ 78). But he presents no specific factual allegations to support his claim and "the First Amendment does not guarantee access to property for speech activities simply because it is government owned." *Occupy Minneapolis v. Cnty. of Hennepin*, 866 F. Supp. 2d 1062, 1068 (D. Minn. 2011) (RHK/TNL) (citing, *inter alia*, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985)). Rickmyer fails to state a claim for a § 1983 violation on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.    42 U.S.C. § 1985 Claim

In Count 6, Rickmyer alleges that Jungers, Walker, and Johnson conspired "to refuse to vindicate, refuse to protect, or not to infringe on the constitutional rights of disabled persons in . . . Minneapolis[]" in violation of 42 U.S.C. § 1985. (Second Am. Compl. ¶ 85). Section 1985 states in part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a

> Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).[8] This Section does not provide any substantive right. *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983). Instead, "[t]he rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere . . . ." *Id.* In *Scott*, the Supreme Court found that the First Amendment was the right respondent claimed was infringed. *Id.* Here, the Court finds the rights, privileges, and immunities in Rickmyer's constitutional claims are likewise grounded in the First Amendment based on statements in the Second Amended Complaint. *See* (Second Am. Compl. ¶¶ 37–38, 78). Not only does Rickmyer fail to allege sufficient facts to support his underlying First Amendment claim as discussed above, he merely asserts legal conclusions that Defendants "acted alone and/or together . . ." and "in furtherance of this tacit agreement or conspiracy . . ." without alleging any supporting facts. (*Id.* ¶¶ 86); *see* (*id.* ¶¶ 84–92). Therefore, Rickmyer alleges no cognizable claim under § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[9]

---

[8]     The two other provisions of § 1985 deal with preventing an officer from performing duties; obstructing justice; and intimidating a party, witness, or juror. 42 U.S.C. § 1985(1), (2). Because there are no facts before the Court dealing with any of these issues, the Court construes Rickmyer's claim as alleged under § 1985(3).

[9]     In the same paragraph as his First Amendment claim, Rickmyer makes a cursory allegation that his rights under the Fourth and Fourteenth Amendments were violated. (Second Am. Compl. ¶ 78). Because there are no facts alleged in support of this claim, the Court finds there is no claim on which relief can be granted and declines to further address it.

### 4.   Remaining Claims

Rickmyer's remaining claims are likewise meritless. In Count 7, Rickmyer alleges Minneapolis and ABM violated 42 U.S.C. § 1986 because they failed to prevent the conspiracy alleged under § 1985, and in Count 8, Rickmyer alleges Minneapolis and ABM violated 42 U.S.C. § 1983 in what appears to be an amalgam of Rickmyer's § 1983 and § 1985 claims. (Second Am. Compl. ¶ 93–110). In Count 9, Rickmyer alleges that ABM is vicariously liable for the actions of Jungers, Walker, and Johnson. (Second Am. Compl. ¶¶ 111–14). In Count 10, Rickmyer alleges that ABM was an agent of Minneapolis, Minneapolis failed to train or supervise ABM and Jungers, Minneapolis is liable for ABM and Jungers's § 1983 violations, and that Minneapolis is vicariously liable for the actions of Jungers, Walker, and Johnson. (*Id.* ¶¶ 115–23). In Count 11, Rickmyer alleges Minneapolis is liable for violations of his civil rights under *Monell*. (*Id.* ¶¶ 124–27) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Under *Monell*, a municipality can be a "person" held liable for violations of § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (quoting *Monell*, 436 U.S. at 691).

Because Rickmyer's § 1983 and § 1985 claims (Counts 5 and 6) fail to state a claim on which relief can be granted, Counts 7 through 11 likewise fail to state a claim on which relief can be granted, and the Court does not further address them. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[10]

---

[10]   Rickmyer also makes cursory allegations against Jungers, Walker, and Johnson, "jointly and separately" regarding the following constitutional rights: "violating and depriving [him] of [his] rights to be free from unreasonable seizures and restraints, to be free from excessive force, [his] right to be disabled without being discriminated against, and [his] right to due process of law, all in violation of [his] rights under the Fourth, Fifth[,] and Fourteenth Amendments to the United States Constitution . . . ." (Second Am. Comp. ¶ 100). Because there are no facts to support these allegations, the Court finds they do not present claims on which relief can be granted and declines to further address them.

### 5.     Prejudice

Rickmyer's Second Amended Complaint does not state any claims on which relief can be granted, and should therefore be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Whether to provide Rickmyer with the opportunity to amend is within the discretion of the District Court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be "freely given" unless there is "undue delay, bad faith[] or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment . . . ." *Doe v. Cassel*, 403 F.3d 986, 990–91 (8th Cir. 2005) (internal citations and quotations omitted). But refusing to grant leave to amend "without any justifying reason" is an "abuse of . . . discretion and inconsistent with the spirit of the Federal Rules." *Forman*, 371 U.S. at 182.

Here, Rickmyer fails to state any claim on which relief can be granted. This is true despite the fact that Rickmyer has the benefit of two previous documents from the Court finding these allegations do not state a claim on which relief can be granted, and despite the fact that he has now filed four complaints on the same basic set of facts. *See Walker* R&R; (Am. Order Dated Apr. 21, 2014); *see also* Compl., *Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No. 1]; (Compl.); (Am. Compl.); (Second Am. Compl.).

In addition, rather than file an objection to the *Walker* R&R under District of Minnesota Local Rule 72.2, Rickmyer voluntarily dismissed the *Walker* case. Notice of Dismissal, *Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No. 30]. Nearly a year later, he initiated the instant case against the same defendants as those named in the *Walker* case (in addition to naming other defendants) on substantially similar grounds. (Compl.). Even after the *Walker* R&R, and after

this Court's order advising Rickmyer that his Amended Complaint was insufficient, Rickmyer fails to state claims on which relief can be granted. *See* (Am. Order Dated Apr. 21, 2014).

Additionally, Rickmyer's voluntary dismissal of the *Walker* case, followed by the initiation of the instant case, suggests to the Court that Rickmyer is attempting to manipulate the judicial process and avoid adjudication on the merits through voluntary dismissals. This suspicion is further supported by the same pattern in an unrelated case, where Rickmyer likewise voluntarily dismissed his case following the Honorable Jeanne J. Graham's Report and Recommendation recommending denial of Rickmyer's Motion for Temporary Restraining Order and recommending dismissal. Report and Recommendation Dated Dec. 6, 2013, *Rickmyer v. Jordan Area Community Council, Inc.*, No. 13-cv-2900 (JNE/JJG) [Doc. No. 11] (the "*JACC* case"); Notice of Dismissal, *Rickmyer v. Jordan Area Community Council, Inc.*, No. 13-cv-2900 (JNE/JJG) [Doc. No.12]; Order Dated Dec. 17, 2013, *Rickmyer v. Jordan Area Community Council, Inc.*, No. 13-cv-2900 (JNE/JJG) [Doc. No. 13].

Further, this Court takes judicial notice of the standing order regarding Rickmyer in Hennepin County, which is a public document. Standing Order, *In re the Matter of Peter Rickmyer*, Hennepin Cnty, Minn. (June 19, 2012).[11] The Standing Order prohibits Rickmyer from filing new cases in Hennepin County unless a licensed attorney has signed the pleading and the chief judge has approved the filing. Standing Order ¶ 1. It also prohibits Rickmyer from filing documents in open cases that are not signed by a licensed attorney, and from filing any documents in closed cases unless approved by the chief judge. *Id.* ¶¶ 2–3. Although Rickmyer has not reached that level yet in this District, the Court is concerned that his voluntary dismissal

---

[11] The defendants in the *Walker* case brought the Standing Order to the Court's attention. *See* Ex. B, Attached to Aff. of Kristin Sarff, *Rickmyer v. Walker*, No. 13-cv-1161 (JRT/SER) [Doc. No. 18-2].

of both the *Walker* case and the *JACC* case following the magistrate judges' reports and recommendations indicate a lack of respect for the Court's limited resources. Rickmyer is cautioned that this District has entered orders similar to the Standing Order in Hennepin County. *See, e.g.*, *Johnson v. U.S. Bank, N.A.*, No. Civ. 04-4945 (JNE/SRN), 2005 WL 1421461, at *2 (D. Minn. June 17, 2005) (permanently enjoining plaintiff from bringing additional actions against the defendants based on the subject matter of a previously-filed identical case).

The Court believes any new complaint Rickmyer may file on this set of facts would likewise fail to state a claim on which relief can be granted. But because Rickmyer is a *pro se* litigant, the Court recommends this action be dismissed without prejudice.

Because the Court recommends dismissal of this action, it recommends both Rickmyer's IFP Application and Motion to Appoint Counsel be denied as moot.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1.    Plaintiff Peter Rickmyer's application for leave to proceed *in forma pauperis* [Doc. No. 2] be **DENIED as moot**;

2.    Plaintiff Peter Rickmyer's Motion to Appoint Counsel [Doc. No. 3] be **DENIED as moot**, and

3.    This action be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Dated: July 14, 2014

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 28, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.